# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NORMA QUINONES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 15 CV 6072 ) |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) Magistrate Judge Gilbert ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Claimant Norma Quinones ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's application for disability insurance benefits under Title II of the Social Security Act. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1. [ECF No. 8.] The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [ECF Nos. 15, 22.] For the reasons discussed below, Claimant's motion for summary judgment is granted, and the Commissioner's is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits on November 16, 2011, alleging a disability onset date of September 1, 2010. (R. 12.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 12, 83.)

Claimant appeared and testified before an Administrative Law Judge (the "ALJ") on December 11, 2013. (R. 12, 25.) A vocational expert, Stephen Sprauer, also testified at the hearing. (*Id.*)

On January 9, 2014, the ALJ issued a written decision denying Claimant's application for benefits based on a finding that she was not disabled under the Social Security Act. (R. 12-19.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 § C.F.R. 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of November 16, 2011. (*Id.* at 14.) At step two, the ALJ found that Claimant had the severe impairments of a history of hepatitis C, a history of alcohol and drug abuse, obesity, diabetes, depression, and panic disorder. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 § C.F.R. 404.1520.) (*Id.*)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to work at the light level with the following limitations: lifting no more than 20 pounds occasionally and 10 pounds frequently, standing or walking 6 hours in an 8 hour work day; and sitting 6 hours in an 8 hour work day. (R. 15.) Claimant could not climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could not tolerate contact with the public; could tolerate incidental contact with coworkers; could not tolerate close supervision; and could perform one, two and three-step jobs. (*Id.*)

Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (*Id.* at 17-18.) Then, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 19.) Specifically, the ALJ found Claimant could work as a housekeeper, advertising material

distributor, and shipping/ receiving routing clerk. (*Id.*) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (*Id.*)

On February 7, 2014, Claimant sought review of the ALJ's decision. (R. 8.) On May 8, 2015, the Social Security Appeals Council denied the request for review. (R. 1.) The ALJ's decision became the final decision of the Commissioner. (*Id.*) *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, a court may not "displace [an] ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court "will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means relevant evidence that a reasonable person would accept as adequate to support an ALJ's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under this standard, a mere scintilla of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). In reviewing the Commissioner's decision, a court cannot reconsider the evidence or make independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Even when there is adequate evidence in the record to support an ALJ's decision, the findings will not be upheld if the ALJ failed to build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While an ALJ is not required to address every piece of evidence in the record, his analysis must be thorough

3

enough for the reviewing court to understand his reasoning. *Zurawski v. Halter,* 245 F.3d 881, 889 (7th Cir. 2001). At a minimum, an ALJ must provide enough detail and clarity to allow meaningful appellate review. *Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

### III. ANALYSIS

Claimant presents two issues for review. First, Claimant argues that the ALJ erred in assessing the credibility of Claimant's testimony and allegations. (Pl. Mot. at 6.) Second, Claimant contends that the ALJ erred at step five in his assessment of the jobs Claimant could perform in light of her RFC. (Pl. Mot. at 13.)

**A.   The ALJ Erred in Evaluating Claimant's Subjective Symptom Statements**

Because an ALJ's credibility determination generally will affect the outcome of the RFC analysis, the Court addresses Claimant's credibility argument first. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012) (the assessment of a claimant's ability to work will often depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms.) The Court will not overturn an ALJ's credibility determination unless it is "patently wrong." *See Shideler v. Astrue,* 688 F.3d 306, 310-11 (7th Cir. 2012). An ALJ, though, must provide specific reasons for his credibility finding, and he must support those reasons with evidence and explanation sufficient to allow a reviewing body to understand his reasoning. *Craft v. Astrue,* 539 FF3.d 668, 678 (7th Cir. 2008). Moreover, in making a credibility determination, an ALJ is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). Further, an ALJ

4

"may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).

Since the ALJ issued his decision in this case, the Social Security Administration ("SSA") issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. Social Security Ruling ("SSR") 96-7p and its focus on "credibility" has been superseded by SSR 16-3p. 2016 WL 1119029, at *1. The new SSR directs administrative law judges to focus on the "intensity and persistence of [the applicant's] symptoms" rather than on "credibility." *Cole v. Colvin*, __F.3d__, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.") Because SSR 16-3p is simply a clarification of the SSA's interpretation of existing law, rather than a change to it, this new ruling applies to Claimant's argument in this case. *See Quails v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6 (N.D. Ill. Apr. 27, 2016). The new SSR still requires the ALJ to consider familiar factors in evaluating the intensity, persistence and limiting effects of a claimant's symptoms such as testimony, objective medical treatment, medication and its side effects, daily activities etc. *See* SSR 16-3p *4-7 (S.S.A), 2016 WL 1119029. Here, there are a few factors that the ALJ seems to have ignored or not explained in his analysis.

The ALJ committed a number of errors in his analysis of Claimant's alleged symptoms that Claimant argues are indicative of her disability. The ALJ failed to explain how he considered Claimant's medications and their side effects in evaluating Claimant's alleged

symptoms. Claimant's psychiatrists prescribed psychotropic medications including Cymbalta, Trazadone, Lexapro and Xanax to treat symptoms of Claimant's mental impairments. (R. 495, 554). At the hearing, Claimant testified that Trazadone caused her to suffer lapses in memory. (R. 50). In a function report dated May 18, 2012, Claimant further indicated that she could not sleep for days at a time and that she was "in a daze" and could not concentrate due to side effects of the Trazadone. (R. 188). The ALJ made no reference to these medications and their purported side effects in his analysis despite the fact that they could impact Claimant's ability to work full-time. *See Flores v. Massanari*, 19 Fed. Appx. 393, 399 (7th Cir. 2001) ("The side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process.") Without such discussion, this Court has no way to know if the ALJ considered Claimant's medications and their side effects in his deliberation. This oversight precludes an informed review and requires the case be remanded for further findings.

The ALJ further erred by failing to explain why Claimant's testimony concerning her activities of daily living did not support her credibility. The ALJ's only reference to activities of daily living was to note that Claimant was able to dress herself and tend to her own grooming and hygiene on a daily basis; that she was able to pay bills and enjoyed spending time with her family; and that Claimant's mother and father helped her with cleaning, laundry, and grocery shopping. (*Id.* at 14-15). An ALJ cannot rely on such minimal daily activities to discredit a claimant without at least explaining the basis for his reasoning. *See, e.g. Bjornson*, 671 F.3d at 647; *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2010); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (noting "minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity"). The ALJ did not do so here.

Additionally, the ALJ did not address pertinent parts of Claimant's testimony when discussing her activities of daily living. In her testimony, Claimant indicated that she needed to be accompanied by others when she shopped for groceries because she feared being alone in the presence of strangers (R. 46); she feared she would suffer a panic attack if she left her home alone (R. 43); when she suffered a panic attack, she locked herself in her bedroom and took anti-anxiety medication and waited for the symptoms to abate (R. 52). In a function report dated May 18, 2012, Claimant also indicated that she frequently lacked the motivation to bathe or to change her clothing (R. 182); and that she relied on her family to assist with household chores (R. 183). The ALJ did not refer to any of these portions of Claimant's testimony or allegations. An ALJ's failure to discuss evidence contrary to her determination warrants remand because an ALJ cannot cherry-pick evidence. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Moreover, the sparse examination of Claimant's testimony hinders the Court's ability to engage in a meaningful review of the ALJ's decision. *Eakin v. Astrue*, 432 Fed. Appx. 607, 611 (7th Cir. 2011).

Further, the ALJ appeared to have decided that Claimant was not credible because "[i]n spite of allegations of severe panic attacks, she had never been hospitalized." (R. 16.) This reasoning, however, has been rejected by the Seventh Circuit, which has noted that "[t]he institutionalization of the mentally ill is generally reserved for person who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Nothing in the SSRs or regulations requires a claimant to be hospitalized to demonstrate a severe mental impairment. *Worzalla v. Barnhart*, 311 F.Supp.2d 782, 796 (E.D.Wis. 2004). The ALJ offers no support for

his apparent assumption that Claimant had to be hospitalized before her testimony would be deemed credible.

The ALJ also erred when using a single Global Assessment of Functioning ("GAF") score of 70 in support of his finding that the "[t]reatment records do not reflect the severe symptomatology claimant alleges." (R. 16.) The Seventh Circuit has noted that a GAF score reflects only a single point in time, and has cautioned that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d at 710-711; *see also Sambrooks v. Colvin*, 566 Fed. App'x 506, 511 (7th Cir. 2014). The ALJ did not explain how the single GAF score, used to assess the severity of Claimant's symptoms at one point in time, calls into question the severe symptomatology Claimant alleged.

Similarly, the ALJ erred by faulting Claimant's credibility due to two notations in the records indicating improvement with treatment. The ALJ pointed out that on October 31, 2013, a treatment note indicated that Claimant reported a great deal of improvement in her sleep and mood, that her anxiety was decreased and that she was feeling more relaxed. (R. 17.) The ALJ also highlighted that on May 1, 2013, a treatment note indicated that Claimant had "been feeling great" with more energy. (*Id.*) The ALJ failed to explain how these notations in the records impugn Claimant's credibility or suggest that her documented mental impairments -- including her severe panic attacks -- have been mitigated by treatment. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2010) ("[T]he ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has a "good day" does not imply that the condition has been treated.") Further, as the Seventh Circuit

8

has noted, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 740. In order to reject Claimant's allegations based on snapshots of Claimant's responses to treatment, the ALJ must connect how this improvement has restored Claimant's ability to work. *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014); *Scott*, 647 F.3d at 740.

Finally, the ALJ erred when he faulted Claimant because she was inconsistent in reporting the frequency of her panic attacks. (R. 17.) The ALJ noted that in January 2012, Claimant reported panic attacks three times a week, but in July 2012, Claimant indicated that she had three panic attacks a month. (R. 17.) As noted above, the Seventh Circuit has directed ALJ's to take into account that individuals suffering from mental illness may have "good days and bad days, and possibly good and bad months." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008); *see also Punzio*, 630 F.3d at 710-711. Indeed, Social Security Rulings instruct an ALJ to consider that symptoms may fluctuate when evaluating inconsistencies in a claimant's statements. SSR 16-3p, 2016 WL 1119029, at *8 ("Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms"); *see also* SSR 96-7p. The ALJ failed to offer any such analysis or to explain how variations in the frequency of Claimant's panic attacks undercut her credibility concerning the impact those attacks had on her ability to work a full work day on a consistent basis.

For these reasons, the Court finds that remand is necessary. On remand, the ALJ should more thoroughly analyze Claimant's testimony, and should do so consistent with the new relevant regulation. SSR 16-3p, 2016 WL 1119029, at *1 (March 28, 2016) (superseding SSR 96-7p). To be clear, the Court is not finding that, on remand, the ALJ must credit Claimant's

testimony and award benefits. Rather, the ALJ should evaluate the entire record, including Claimant's testimony, and thoroughly explain the rationale that underlies whatever decision he ultimately makes.

B.  **The ALJ Failed to Adequately Address Claimant's Moderate Impairments in Concentration, Persistence, or Pace in the RFC or in the Hypothetical to the VE**

Claimant also argues that the ALJ erred at step five when he did not incorporate Claimant's moderate limitations in concentration, persistence or pace in the RFC or his hypothetical questions to the VE. (Pl. Mot. at 16.) The Court agrees.

The ALJ concluded at step two of his analysis that Claimant had moderate difficulties with regard to concentration, persistence, or pace. (R. 15.) However, the ALJ did not sufficiently address these difficulties in his RFC or in the hypothetical questions he posed to the VE. (*Id.* at 62.) In the Seventh Circuit, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015) ("Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace"); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009) (hypothetical question "must account for documented limitations of 'concentration, persistence, or pace' ").

Indicating in the RFC that Claimant "could not tolerate contact with the public; could tolerate incidental contact with coworkers; could not tolerate close supervision; and could perform one, two, or three-step jobs", (R. 15), does not adequately account for Claimant's moderate limitations in maintaining concentration, persistence or pace. The Seventh Circuit has "repeatedly rejected the notion that . . . 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations

10

in concentration, persistence, and pace.'" *Varga*, 794 F.3d at 814-15 (quoting *Yurt*, 758 F.3d at 858-60); *see also O'Conner-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("[E]mploying terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the [VE's] consideration those positions that present significant problems of concentration, persistence and pace"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting claimant to unskilled, simple work does not account for his difficulty with memory, concentration, and mood swings).

Indeed, the Seventh Circuit has held that in most cases, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical [posed to a vocational expert] in order to focus the [expert's] attention on these limitations[.]" *O'Conner-Spinner*, 627 F.3d 620-21. Exceptions to this general rule apply when the VE has independently reviewed the medical records or has heard testimony that directly addresses those limitations (*Id.* at 620). Neither of these exceptions applies in this case. There is no indication that the VE reviewed the medical records or heard testimony that directly addressed Claimant's limitations in concentration, persistence or pace. Thus, we cannot know if the VE overestimated the jobs that Claimant could perform, because the VE was given an incomplete hypothetical which did not expressly include limitations on concentration, persistence or pace. Therefore, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion" that Plaintiff can work. *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. On this record, the Court must conclude that the ALJ's decision is not supported by substantial evidence. On remand, the ALJ should pose a hypothetical question or questions that explicitly "account for documented limitations of 'concentration, persistence, or pace.'" *Stewart*, 561 F.3d at 684.

### C. Other Matters Raised By Claimant

Because remand is required for the above reasons, the Court need not explore in detail at this time the remaining errors in step five asserted by Claimant since that analysis would not change the result in this case.

Finally, Claimant requests a reversal of the Commissioner's decision with an order to award benefits or, in the alternative, a reversal with a remand for further proceedings. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The court may reverse with an instruction to award benefits only if "all factual issues have been resolved and the record can yield but one supportable conclusion." *Briscoe ex. re. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citation omitted). That is not the case here. The ALJ failed to properly evaluate Claimant's credibility and failed to address sufficiently Claimant's moderate limitations in concentration, persistence or pace in the RFC or in the hypothetical question presented to the VE. It is not the purview of this Court to gather or reweigh evidence. Therefore, remand for further proceedings is the appropriate remedy.

### IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 15] is granted, and the Commissioner's motion [ECF No. 22] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with the Court's Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 23, 2017